UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID H. HOFFMAN and
CLAUDIA Y. HOFFMAN,

    Plaintiffs,

vs.                                         Case No. 8:02-CV-1780-T-27TGW

BANK OF AMERICA, N.A.,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion for Summary Judgment (Dkt. 74), Defendant's Memorandum in Support (Dkt. 75), and Plaintiffs' Response (Dkt. 79). Upon consideration, Defendant's Motion for Summary Judgment is GRANTED.

### Introduction

Plaintiffs, David H. Hoffman and Claudia Y. Hoffman, allege that Defendant, Bank of America, violated the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, *et seq.*, by disclosing their financial records and information to the United States Air Force, David Hoffman's employer. (Dkt. 1, Compl.). Specifically, Plaintiffs allege that Defendant provided the Air Force with more information than authorized pursuant to 12 U.S.C. § 3403(b) and (c).

Defendant argues that it is entitled to summary judgment because: 1) it is immune from liability pursuant to 12 U.S.C. §§ 3403(c), 3413(d), and 3413(i); 2) it has an affirmative defense to liability pursuant to 31 U.S.C. § 5318(g)(3); 3) there is no causal connection between its allegedly improper disclosures to the Air Force and Plaintiffs' alleged damages; and 4) there is no evidence that it made any disclosures regarding Claudia Hoffman or her banking activity. (Dkt. 74, pp. 1-7).

1

## Factual Background[1]

Plaintiff, David Hoffman's legal name is David Juillerat.[2] (Dkt. 73, Plaintiff's Resp. to Defendant's Req. for Admis. ("Plaintiff's Resp."), No. 3). David Juillerat usually came into Defendant's branch bank at Ellenton to do his banking. (Dkt. 65, Plaintiff's Depo., p. 53). David Juillerat and his wife were known as David and Donna Juillerat by certain bank personnel.[3] (Dkt. 76, Tritschler's Aff., ¶ 6; Plaintiff's Depo., p. 83). Some employees at the branch knew him as David Juillerat because he had engaged in other transactions in the past as David Juillerat. (Tritschler's Aff., ¶ 6; Plaintiff's Depo., pp. 52-53). Some employees at the branch knew Donna Juillerat and their three children. (Tritschler's Aff., ¶ 6). Plaintiff knew one of the tellers by name (Angie) because she had rented her house from Donna Juillerat's father. (Plaintiff's Depo., p. 53). Plaintiff would exchange "courtesies" with bank personnel. (Plaintiff's Depo., p. 53).

---

[1] Along with the present motion, Defendant filed a Motion to Establish Agreed Facts (Dkt. 77). Plaintiffs filed a Response and Objection (Dkt. 82). Based on these filings, the Court sets forth the undisputed, material facts as agreed by the parties. To the extent the summary judgment record is set forth in this Order, Defendant's Motion to Establish Agreed Facts (Dkt. 77) is DENIED as moot.

[2] Plaintiff maintains that he is prosecuting this case under his legal name, David Hoffman. (Plaintiff's Depo., p. 5). Notwithstanding, Plaintiff has never legally changed his name from David Juillerat to David Hoffman. (Plaintiff's Depo., pp. 158-159, 223-224; Plaintiff's Resp., No. 105). David Hoffman is, therefore, not a proper party to this action.

Fed. R. Civ. P. 10(a) requires a complaint to "include the names of all the parties." Apart from the requirements of the federal rules, "[b]asic fairness dictates that those among the defendants' accusers who wish to participate in [a lawsuit] as individual party plaintiffs must do so under their real names." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979). Accordingly, were this Court not entering summary judgment for Defendant, the case would be subject to dismissal *sua sponte*.

For purposes of clarity, "Plaintiff" refers to "David Juillerat a/k/a David H. Hoffman." "Plaintiffs" refers to David and Claudia Hoffman, collectively.

[3] Plaintiff married Donna Jean Ayres on June 14, 1985, in Greene County, Missouri. (Dkt. 67, Donna Juillerat's Depo., pp. 64-65, Ex. 2). Donna Jean Ayres Juillerat is alive, and no order or judgment has been entered by any court annulling or dissolving her marriage to Plaintiff. (Plaintiff's Depo., pp. 16, 29). Plaintiff married Claudia Yaneth Escobar Paramo a/k/a Claudia Hoffman on January 24, 1998, in Medellin, Colombia, South America. (Plaintiff's Depo., pp. 29, 126-127). At the time of his marriage to Claudia Hoffman, Plaintiff was legally married to Donna Juillerat. (Plaintiff's Depo., pp. 32, 126-127).

2

Plaintiff, as David Juillerat, went to the Ellenton branch with Donna Juillerat and their children on October 4, 1999. (Plaintiff's Depo., pp. 49, 52). Plaintiff, Donna Juillerat, and their children appear in photographs taken by the security camera at the branch on October 4, 1999, which show certain events that took place between approximately 2:55p.m. and 3:27p.m. (Plaintiff's Depo., pp. 55-56, Ex. 3; Donna Juillerat's Depo., pp. 68-70, Ex. 5). Plaintiff entered the branch at approximately 2:55p.m. and proceeded to the teller 2 position. (Tritschler's Aff., ¶ 4; Plaintiff's Depo., pp. 55-56).

At the teller 2 position, David Juillerat cashed a $7,000.00 check drawn on a Texas bank account in the name of "David Hoffman." (Plaintiff's Depo., pp. 57-59, Ex. 4). The check was made out to "cash." (Plaintiff's Depo., p. 57). Plaintiff endorsed the back of the check as "David H. Hoffman" and presented a Florida driver's license for "David H. Hoffman" that had his photograph. (Plaintiff's Depo., pp. 59-61; Plaintiff's Resp., No. 111). The Florida driver's license for "David H. Hoffman" was presented to the teller and the driver's license information for "David H. Hoffman" was written on the back of the check. (Plaintiff's Depo., pp. 59-61). When Plaintiff produced a driver's license for himself as David Hoffman, his wife and one of his children stood next to him. (Tritschler's Aff., ¶ 8, Ex. D, photo 5; Donna Juillerat's Depo., pp. 68-70, Ex. 5, photo 3). The transaction at the teller 2 position ended at approximately 3:02p.m. (Tritschler's Aff., ¶ 8, Ex. D, photo 6; Plaintiff's Depo., Ex. 3, photo 6).

Approximately three minutes later at 3:06p.m., Plaintiff returned to the teller line to complete a series of transactions at the teller 4 position. (Tritschler's Aff., ¶ 5). Plaintiff presented twenty one (21) checks, including twenty (20) Air Force paychecks for nine (9) months, all of which were made payable to "David Juillerat" or "David H. Juillerat," and one (1) tax refund check made payable to "David H. & Donna J. Juillerat," totaling $42,271.72. (Tritschler's Aff., ¶ 5; Plaintiff's Depo., pp.

3

65-66, 73-74, Exs. 6, 7 and 61). Plaintiff endorsed each of these checks as "David Juillerat." (Tritschler's Aff., ¶ 5; Plaintiff's Depo., pp. 67, Exs. 6, 7 and 61). The checks were not deposited into the bank account that David Juillerat had with his wife, Donna Juillerat (account ending 3123). (Plaintiff's Depo., pp. 67-68). Rather, the checks were deposited into Timothy Juillerat's account, David Juillerat's son. (Tritschler's Aff., ¶ 5; Plaintiff's Depo., pp. 67-68, 75, Exs. 6, 7 and 61).

Although the teller at the teller 2 position had processed the $7,000.00 check transaction, she confirmed with another teller that Plaintiff was "David Juillerat," who had previously engaged in prior transactions at the branch and was known by bank employees as "David Juillerat." (Tritschler Aff., ¶ 6). While Plaintiff was at the teller 4 position, bank personnel confronted Plaintiff with the discrepancy in his identification as David Hoffman as presented several minutes earlier with the $7,000.00 check transaction. (Plaintiff's Depo., pp. 61-62). Plaintiff, identifying himself at that time as David Juillerat, said that he was confused and that David Hoffman was a business associate. (Plaintiff's Depo., p. 61). Plaintiff, as David Juillerat, then endorsed the back of the $7,000.00 check as David Juillerat. (Plaintiff's Depo., pp. 62-63; Plaintiff's Resp., No. 109). The back of the $7,000.00 check has the signature of Plaintiff as both "David Hoffman" and "David Juillerat," with David Hoffman's driver's license number. (Plaintiff's Depo., pp. 62-63, Ex. 4).

The bank personnel, including the branch manager, reported what they had observed regarding Plaintiff's banking transactions to Defendant's corporate security department. (Dkt. 60, Tritschler's Depo., pp. 15, 17, 29-30). The branch manager faxed to the corporate security department copies of the government checks, the front of the $7,000.00 check, and signature cards for David and Donna Juillerat's account (account ending 3123) and David Hoffman's account (account ending 5092). (Tritschler's Depo., pp. 15, 17, 29-30).

Paula Tritschler, an investigator in the corporate security department, evaluated the information received from the branch. (Tritschler's Depo., pp. 13-15). Tritschler was concerned that Plaintiff's activities at the bank on October 4, 1999 were "suspicious" and "that something illegal was occurring with the use of the dual identity."[4] (Tritschler's Depo., pp. 100, 103). Tritschler's concern regarding Plaintiff's suspicious activities was based on the fact that Plaintiff came into the bank as one individual (David Hoffman) when the bank knew him as someone else (David Juillerat). (Tritschler's Depo., pp. 21, 78-79, 104). Tritschler was also concerned that suspicious activity was occurring because Plaintiff, acting as David Hoffman, had endorsed the $7,000.00 check as David Hoffman and presented a driver's license in the name of David Hoffman, but when confronted about his identify, he claimed that David Hoffman was a business associate. (Tritschler's Depo., pp. 104-105). Further, Tritschler was concerned because Plaintiff had been requested to endorse the $7,000.00 check in the name by which he was known, David Juillerat, and that he had done so without any problem. (Tritschler's Depo., pp. 104-105). The fact that Plaintiff, acting as David Juillerat, subsequently deposited multiple payroll checks and a tax refund check also caused concern that the checks may be counterfeit. (Tritschler's Depo., pp. 103-104).

Based on the events of October 4, 1999, Defendant's corporate security department contacted the Air Force, Plaintiff's employer.[5] (Tritschler's Depo., pp. 21, 103-108). Since the bank was aware that David Juillerat was in the Air Force, Tritschler notified the Office of Special Investigations ("OSI") at MacDill Air Force Base of David Juillerat's activities, including his use of dual identities to conduct

---

[4] Plaintiffs assert in their Response and Objection to Defendant's Proposed Facts that this statement of fact is disputed. (Dkt. 82, p. 3, ¶ 6). However, the statement of fact is supported by the record, and Plaintiffs have not offered any specific facts or other record evidence showing a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[5] Plaintiff was an Air Force intelligence officer for Central Command and held "top secret sensitive compartment information" security clearance. (Plaintiff's Depo., pp. 50-51).

5

the banking transactions.[6] (Tritschler's Aff., ¶ 7). On October 8, 1999, Tritschler provided the Air Force with copies of the twenty one (21) checks deposited by Plaintiff. (Tritschler's Depo., pp. 66-67, Ex. 4; Tritschler's Aff., ¶ 7, Ex. B). On October 15, 1999, Tritschler provided the Air Force with copies of the $7,000.00 check cashed by Plaintiff that had a "David Hoffman" signature on the front, the signature card for the bank account in the name of David Hoffman, and the signature card for the bank account in the name of David Juillerat, which demonstrated identical signatures.[7] (Tritschler's Depo., pp. 78, 106, Ex. 4; Tritschler Aff., ¶ 7, Ex. C). Tritschler also provided copies of photographs from the bank's security camera.[8] (Tritschler's Aff., ¶ 8, Ex. D).

The events that led Defendant to report this activity to the Air Force arose from Plaintiff's use of dual identities to conduct banking transactions. (Tritschler's Aff., ¶ 4). Tritschler avers that Plaintiff's activities "were suspicious and were viewed by [Defendant] to be suspicious that a possible crime or violation of law may have occurred." (Tritschler's Aff., ¶ 6). Tritschler further avers that from Defendant's perspective, "the events which occurred on October 4, 1999, were sufficiently suspicious to require a referral of this matter to law enforcement." (Tritschler's Aff., ¶ 7).

On November 4, 1999, Defendant was served with a grand jury subpoena and complied by providing the requested information and records. (Tritschler's Aff., ¶ 9, Ex. E). The only records disclosed by Defendant prior to the November 4, 1999 grand jury subpoena were copies of the twenty one (21) government-issued

---

[6] Based on Tritschler's prior experiences in reporting suspicious activities of military personnel, she was aware that the local law enforcement authority would refer her to the OSI to pursue military disciplinary action. (Tritschler's Aff., ¶ 7).

[7] David Hoffman's handwriting and signature on the front of the $7,000.00 check matched the signatures of David Hoffman and David Juillerat on the back of the check. (Plaintiff's Depo., pp. 62-63; Tritschler's Depo., p. 106, Ex. 4). Tritschler did not provide a copy of the back of $7,000.00 check on this date because she had not received it. (Tritschler's Depo., p. 106).

[8] Tritschler does not recall the exact date that the photographs were provided to the Air Force. (Tritschler's Aff., ¶ 8). However, it is undisputed that Defendant provided the photographs sometime prior to the issuance of the grand jury subpoena on November 4, 1999. (Tritschler's Aff., ¶¶ 7-8; Dkt. 77-2, p. 7, ¶ 67; Dkt. 82).

6

checks, the $7,000.00 check, two (2) signature cards showing the signatures of David Hoffman and David Juillerat, and photographs from the security camera. (Tritschler's Aff., ¶¶ 7-8).

Defendant maintains that it did not provide any information regarding Claudia Hoffman except in response to the grand jury subpoena. (Tritschler's Aff., ¶ 12). Plaintiffs maintain that Defendant did, in fact, provide information about Claudia Hoffman to the Air Force by providing account information for the joint account she held with Plaintiff. It is undisputed, however, that the name "Claudia Hoffman" or "Claudia Escobar" never arose in any of Tritschler's conversations with the Air Force in mid-October 1999. (Tritschler's Depo., pp. 76, 85).

In 2000, the Air Force prosecuted and convicted Plaintiff of various dual identity related charges and bigamy. (Plaintiff's Resp., Nos. 97-99; Dkt. 41-5, Report of Result of Trial). Plaintiff received a sentence of forfeiture of all pay and allowances, dismissal from the Air Force, and confinement for thirty six (36) months. (Plaintiff's Resp., No. 100; Dkt. 41-5). On October 16, 2002, the United States Air Force Court of Criminal Appeals affirmed the conviction and denied Plaintiff's petition for a new trial. (Dkt. 41-6).

## **Applicable Standards**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (*internal citations omitted*). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence

7

must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## Discussion

Plaintiffs allege that Defendant violated the RFPA by disclosing more of their financial information and records to the Air Force than authorized pursuant to 12 U.S.C. § 3403(b) and (c).[9] In moving for summary judgment, Defendant maintains that it did not disclose more information than authorized by statute and is therefore not liable for violating the RFPA. Defendant argues that it is entitled to summary judgment because: 1) it is immune from liability pursuant to 12 U.S.C. §§ 3403(c), 3413(d), and 3413(i); 2) it has an affirmative defense to liability pursuant to 31 U.S.C. §

---

[9] In response to the present motion, Plaintiffs argue: "Plaintiff's complaint alleges that on three (3) separate occasions, October 13, 1999, October 22, 1999 and February 18, 2000, representatives of the Defendant met with the Air Force and turned over financial records relating to not just with regard to David H. Hoffman, but also Claudia Y. Hoffman, in violation of the RFPA." (Dkt. 79, p. 2). However, Plaintiffs do not provide a citation to the record to support this allegation. Plaintiffs also do not provide specific facts or evidence of disclosures that they allege violated the RFPA, other than the financial information and records Defendant acknowledges that it sent to the Air Force in October 1999. (Tritschler's Aff., ¶¶ 7-8).

5318(g)(3); 3) there is no causal connection between its allegedly improper disclosures to the Air Force and Plaintiffs' alleged damages; and 4) there is no evidence that it made any disclosures regarding Claudia Hoffman or her banking activity.

"The Right To Financial Privacy Act, 12 U.S.C. §§ 3401-3422, protects the secrecy of customers' financial records in banks, by limiting both federal law enforcement ability to obtain access to the information, and the bank's freedom to give it out." *Puerta v. United States*, 121 F.3d 1338, 1341 (9th Cir. 1997). Among other things, the RFPA defines the conditions under which financial institutions may disclose an individual's financial records and provides a civil cause of action for anyone injured by a violation of the Act's substantive provisions. *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1190 (11th Cir. 1997) (*citing* 12 U.S.C. §§ 3403 and 3417).

**I.      12 U.S.C. § 3403(c)**

Section 3403(b) of the RFPA provides that "[a] financial institution shall not release the financial records of a customer until the Government authority seeking such records certifies in writing to the financial institution that it has complied with the applicable provisions of this chapter." 12 U.S.C. § 3403(b). However, the RFPA provides exemptions by which a financial institution may disclose a customer's financial records or information without being required to comply with the procedures set forth in § 3403(b) and without violating the statute. Section 3403(c) provides:

> Nothing in this chapter shall preclude any financial institution ... from notifying a Government authority that such institution ... has information which may be relevant to a possible violation of any statute or regulation. Such information may include only the name or other identifying information concerning any individual, corporation, or account involved in and the nature of any suspected illegal activity. Such information may be disclosed notwithstanding any constitution, law, or regulation ... to the contrary. Any financial institution ... making a disclosure of information pursuant to this subsection, shall not be liable to the customer under any law or regulation of the United States or any constitution, law, or regulation ... for such disclosure or for any failure to notify the customer of such disclosure.

12 U.S.C. § 3403(c).

In moving for summary judgment, Defendant argues that it disclosed Plaintiff's financial information to the Air Force in compliance with relevant statutes and only to the extent that it was "relevant to a possible violation of any statute or regulation." 12 U.S.C. § 3403(c). Since the information was disclosed to a governmental authority pursuant to § 3403(c), Defendant argues that it was exempted from the procedural requirements and therefore cannot be held liable under the RFPA. (Dkt. 74, pp. 4-5). In response, Plaintiffs argue that "there is a genuine dispute as to whether Defendant's disclosures exceeded the scope of protection provided by § 3403(c)." (Dkt. 79, p. 5).

When making a disclosure pursuant to § 3403(c), a financial institution is only permitted to disclose "the name or other identifying information concerning any individual ... or account involved" and "the nature of any suspected illegal activity." 12 U.S.C. § 3403(c). The Eleventh Circuit has not addressed the scope of identifying information that may be disclosed. However, the Ninth Circuit, as cited by Plaintiffs, has held that such identifying information may include the customer's name, copies of the customer's passport, and photographs of the customer. *Puerta*, 121 F.3d at 1345 (scope of permissible identifying information may be greater based on difficulty in ascertaining identity due to use of multiple names).

Further, the Eleventh Circuit has not specifically defined the scope of information that may be disclosed regarding the nature of suspected illegal activity. In *Miranda De Villalba v. Coutts & Co. (USA) Int'l*, 250 F.3d 1351 (11th Cir. 2001), however, the Eleventh Circuit held that the disclosure of the "amount" of a suspicious wire transfer did not go beyond the "nature of the suspected activity." *Miranda De Villalba*, 250 F.3d at 1354 (*internal quotations omitted*). In *Miranda De Villalba*, the court affirmed summary judgment for a defendant based on immunity pursuant to § 3403(c), reasoning that "[w]hat made the request indisputably suspicious was its size, and we would be trifling with the statute if we construed it to permit disclosure of request to transfer

10

'a very large amount,' but not 'a $500,000 amount.'" *Id.* The *Miranda De Villalba* court relied on *Bailey v. USDA*, 59 F.3d 141 (10th Cir. 1995), also cited by Plaintiffs, and noted that "the disclosure of withdrawal and deposit records can qualify as information about [the] 'nature of the suspected illegal activity,' where these amounts are necessary to show grounds for the bank's suspicion." *Id.* (*citing Bailey*, 59 F.3d at 143). The *Miranda De Villalba* court further reasoned that "[t]he congressional concern for privacy was sufficiently observed by not revealing any details of the purported recipient of the funds requested to be wired." *Id.*

Based on Plaintiff's activities on October 4, 1999, Tritschler provided the Air Force with copies of the twenty one (21) government-issued checks, the $7,000.00 check that had a "David Hoffman" signature on the front, the signature card for the bank account in the name of David Hoffman, and the signature card for the bank account in the name of David Juillerat, which demonstrated identical signatures. (Tritschler's Depo., pp. 66-67, 78, 106, Ex. 4; Tritschler's Aff., ¶ 7, Ex. B and C). Tritschler testified that she provided copies of these records as a result of her suspicion that a possible crime was being committed based on Plaintiff's use of dual identities to conduct banking transactions and the possibility that the deposited checks were counterfeit. (Tritschler's Depo., pp. 103-104). Tritschler also provided the Air Force with copies of photographs taken by the security camera at the bank to establish that the person conducting the transaction at the teller 2 position (David Hoffman) was the same person conducting the transaction at the teller 4 position (David Juillerat). (Tritschler's Aff., ¶¶ 8, Ex. D).

On this record, the information and records disclosed by Defendant provided the name and other identifying information concerning Plaintiff's identity and the accounts involved. Specifically, the copies of the cashed and deposited checks, signature cards, and photographs provided by Tritschler disclosed the nature of the suspected illegal activity necessary to show grounds for the

11

bank's suspicion and to assist in ascertaining Plaintiff's identity. These disclosures were permissible and within the scope of § 3403(c). *See Miranda De Villalba*, 250 F.3d at 1354 (*citing Bailey*, 59 F.3d at 143); *Puerta*, 121 F.3d at 1345. Accordingly, Defendant is immune from liability under the RFPA based on these disclosures.

Plaintiffs argue that there is genuine dispute as to whether Defendant's disclosures exceeded the scope of protection provided by § 3403(c). This argument is not supported by the record. Other than their generalized allegation that Defendant impermissibly disclosed their financial information on October 13, 1999, October 22, 1999, and February 18, 2000, Plaintiffs have not offered any evidence of specific facts, by affidavits, depositions, answers to interrogatories, admissions, or otherwise, showing that the disclosures exceeded the limitations of § 3403(c). Plaintiffs have not disputed the content of Defendant's admitted disclosures in October, 1999, prior to Defendant's compliance with the grand jury subpoena. Accordingly, there is no genuine issue of material fact regarding the scope of those disclosures.

Plaintiffs also argue that a dispute exists regarding whether Defendant had a suspicion of criminal activity or violation of law at the time it made the disclosures to the Air Force. (Dkt. 79, pp. 10-11). In support, Plaintiffs argue since "Tritschler could not state a particular criminal activity" that Plaintiff was involved in, Defendant did not have a "reasonable suspicion of criminal activity." (Dkt. 79, p. 11). This argument is without merit and is not supported by the record. Tritschler avers that Plaintiff's activities on October 4, 1999 "were suspicious and were viewed by [Defendant] to be suspicious that a possible crime or violation of law may have occurred." (Tritschler's Aff., ¶ 6). In her Affidavit, Tritschler avers that from Defendant's perspective, "the events which occurred on October 4, 1999, were sufficiently suspicious to require a referral of this matter to law enforcement." (Tritschler's Aff., ¶ 7).

Plaintiffs have not offered any evidence to contradict this testimony or to establish a genuine issue of material fact for trial. Further, a financial institution is not required to identify a specific offense or criminal activity to support its suspicions before being afforded the protections of § 3403(c). *See Puerta*, 121 F.3d at 1344-45. Plaintiffs have not offered any legal authority to the contrary. Moreover, the plain language of § 3403(c) does not require that a financial institution's suspicion regarding suspected illegal activity be "reasonable." Accordingly, Defendant is entitled to summary judgment pursuant to 12 U.S.C. § 3403(c).

## II.  12 U.S.C. § 3413(i)

Section 3413(i) of the RFPA provides an exemption for disclosures made by financial institutions in response to grand jury subpoenas. 12 U.S.C. § 3413(i) ("[n]othing in this chapter ... shall apply to any subpoena or court order issued in connection with proceedings before a grand jury"). It is undisputed that a grand jury subpoena was issued to Defendant on November 4, 1999, and Defendant complied with the subpoena by providing the requested information and records. (Tritschler's Aff., ¶ 9, Ex. E). It is also undisputed that all of the financial information and records provided by Defendant, other than copies of the twenty one (21) government issued checks, $7,000.00 check, signature cards, and the photographs from the security cameras, were produced pursuant to the subpoena. (Tritschler's Aff., ¶¶ 7-8).

In complying with the subpoena, Defendant acted pursuant to 12 U.S.C. § 3413(i) and therefore was exempt from the procedural requirements of the RFPA. Defendant cannot be liable for violating the RFPA based on those disclosures. Plaintiffs have not provided any evidence to dispute Defendant's entitlement to immunity pursuant to 12 U.S.C. § 3413(i). In fact, Plaintiffs have failed to address the applicability of § 3413(i) in their response. Accordingly, Defendant is entitled

to summary judgment pursuant to 12 U.S.C. § 3413(i).[10]

### III.   12 U.S.C. § 3413(d)

In addition to the immunity afforded Defendant by 12 U.S.C. §§ 3430(c) and 3413(i), Defendant argues that it is not liable under the RFPA pursuant to 12 U.S.C. § 3413(d), which allows a financial institution to disclose financial records or information required to be reported by federal statute or rule. 12 U.S.C. § 3413(d) ("Nothing in this chapter shall authorize the withholding of financial records or information required to be reported in accordance with any Federal statute or rule promulgated thereunder."). In support, Defendant argues that the provisions of 31 U.S.C. § 5318(g) and 12 C.F.R. §§ 21.11, 208.62, 353.3 and 563.180 require that banks report suspicious activity associated with known or suspected violations of law and therefore Defendant's disclosures based on these provisions establish its immunity pursuant to 12 U.S.C. § 3413(d).

Plaintiffs do not dispute that 31 U.S.C. § 5318(g) and 12 C.F.R. §§ 21.11, 208.62, 353.3 and 563.180 require financial institutions to report suspicious activity associated with known or suspected violations of law. Plaintiffs do not dispute and, in fact, acknowledge that the regulations "are in essence all the same and deal with the filing of Suspicious Activity Reports ("SAR")." (Dkt. 79, p. 5). Rather, Plaintiffs argue that "through lack of discovery, there still remains a dispute as to a genuine issue of material fact because § 3413(d) does not insulate financial institutions from handing over more information than is required by a SAR." (Dkt. 79, p. 5). This argument lacks merit. Plaintiffs filed this lawsuit on September 30, 2002. (Dkt. 1). Although the case was stayed from April 2003 through October 2003 pending Plaintiff's court martial appeal, Plaintiffs have had over two and one half years to conduct discovery. Plaintiffs have had ample opportunity to present

---

[10] Similarly, Defendant is also protected from liability under the RFPA for disclosures made in compliance with a subpoena pursuant to 31 U.S.C. § 5318(g)(3).

14

specific facts establishing a genuine issue for trial but have not done so.

Plaintiffs also contend: "In order to disclose any information that is not prepared in conjunction with a SAR, the requirements of the RFPA must be met. Thus, it is possible Defendant exceeded the protection provided to it by § 3413(d) and, therefore, may be liable to Plaintiffs." (Dkt. 79, p. 5). This unsupported contention does not preclude summary judgment. The record is devoid of any evidence establishing the existence of a genuine issue of material fact as to content of an SAR related to Plaintiff's October 4, 1999 conduct.[11]

As Defendant was required by statute and relevant regulations to report Plaintiff's suspicious activity, Defendant is immune from liability for its disclosure pursuant to § 3413(d). Accordingly, Defendant is entitled to summary judgment as a matter of law.

## IV.    31 U.S.C. § 5318(g)(3)

The Annunzio-Wylie Anti-Money Laundering Act of 1992, 31 U.S.C. § 5318(g), provides "an affirmative defense to claims against a financial institution for disclosing an individual's financial records or account-related activity."[12] *Lopez*, 129 F.3d at 1191. Financial institutions are granted immunity from liability based on safe harbors for three different types of disclosures: 1) "disclosure of any possible violation of law or regulation"; 2) "disclosure pursuant to § 5318(g) itself"; or 3) "disclosure pursuant to any other authority." *Id.*; 31 U.S.C. § 5318(g)(3). In moving

---

[11] Notably, as pointed out by Defendant, financial "institutions are prohibited from acknowledging filing, or commenting on the contents of, an SAR unless ordered to do so by the appropriate authorities." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999) (*citing* 12 C.F.R. § 208.20(j) & (g)).

[12] Section 5318(g)(3)(A) provides: "Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority ... shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State ... for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure."

for summary judgment, Defendant argues that it is immune from liability for its disclosures of the suspicious activities that occurred on October 4, 1999 based on the first and third safe harbors.

### A.   First Safe Harbor

Defendant argues that its disclosures are protected by the first safe harbor because it suspected a possible violation of law. In response, Plaintiffs argue that Defendant's disclosures do not fall under the first safe harbor because Defendant did not have a "good faith suspicion" of a possible violation of law or regulation. (Dkt. 79, pp. 6-7). In support, Plaintiffs argue that they allege in their complaint that Defendant's disclosures "were willful and intentional and that there was no good faith basis that a law or regulation may have been violated." (Dkt. 79, p. 7).

To be immune from liability under the first safe harbor, a financial institution must have "a good faith suspicion" of a "possible violation of law or regulation."[13] 31 U.S.C. § 5318(g)(3); *Lopez*, 129 F.3d at 1192-93. As discussed, it is undisputed that Defendant, through Tritschler, was suspicious of Plaintiff's use of dual identities and deposit of potentially counterfeit government-issued checks. (Tritschler's Depo., pp. 103-104; Tritschler's Aff., ¶¶ 4, 6, 7). Tritschler avers that Plaintiff's activities on October 4, 1999 "were suspicious and were viewed by [Defendant] to be suspicious that a possible crime or violation of law may have occurred." (Tritschler's Aff., ¶ 6).

Plaintiffs have not offered any evidence to establish that Defendant's suspicion was not in good faith. To the contrary, the summary judgment record reveals sufficient evidence to support Defendant's good faith suspicion of a possible violation of law or regulation by Plaintiff. In responding to a motion for summary judgment, Plaintiffs cannot rest on the allegations in their

---

[13] "As the use of the adjective 'possible' indicates, a financial institution's disclosure is protected even if it ultimately turns out there was no violation of law. In order to be immune from liability, it is sufficient that a financial institution have a good faith suspicion that a law or regulation may have been violated, even if it turns out in hindsight that none was." *Lopez*, 129 F.3d at 1192-93.

complaint. They must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *See Celotex*, 477 U.S. at 323-24. Plaintiffs have not done so.

Plaintiffs also argue that Defendant is not entitled to immunity under the first safe harbor because "the safe harbor is not intended to protect the disclosure of the customer's entire financial record, but only that which is necessary to report the violation." (Dkt. 79, p. 7). This argument also fails. Plaintiffs have not alleged, and the summary judgment record does not indicate, that Defendant disclosed their "entire financial record." They have not alleged with any specificity which records Defendant provided beyond those records that were necessary to report the violation. Moreover, Defendant is protected by the first safe harbor for disclosures of Plaintiff's "financial records or account-related activity." *Lopez*, 129 F.3d at 1191. As discussed, Defendant's disclosures were limited to Plaintiff's name and other identifying information and the nature of the suspected illegal activity necessary to show the basis for the bank's suspicion. Similarly, Defendant's disclosures were limited to Plaintiff's "financial records or account-related activity." Accordingly, Defendant is entitled to immunity for its disclosures under the first safe harbor of 31 U.S.C. § 5318(g)(3).

### B. Third Safe Harbor

As the issues raised by the parties regarding the third safe harbor are the same as those addressed in Section III above, they will not be repeated here. For the reasons stated, Defendant is entitled to immunity for its disclosures under the third safe harbor of 31 U.S.C. § 5318(g)(3).

## V. Causation and Damages

As this Court has determined that Defendant is immune from liability under the RFPA pursuant to 12 U.S.C. §§ 3403(c), 3413(d), and 3413(i) and 31 U.S.C. § 5318(g)(3), it is not necessary to address the parties' arguments regarding causation and damages. Plaintiffs cannot show a violation of the RFPA and therefore cannot recover damages pursuant to 12 U.S.C. § 3417.

## VI. Claudia Hoffman's Claims

Defendant argues that Claudia Hoffman has no claim under the RFPA because there is no evidence that any disclosure regarding her financial information was made apart from information disclosed pursuant to the grand jury subpoena, which is protected by 12 U.S.C. § 3413(i). Defendant further argues that Claudia Hoffman has no claim pursuant to 12 U.S.C. §§ 3403(c) and 3413(d) and 31 U.S.C. § 5318(g).

Defendant maintains that it did not provide any financial information regarding Claudia Hoffman except in response to the grand jury subpoena. (Tritschler's Aff., ¶ 12). Plaintiffs maintain that Defendant did, in fact, provide information about Claudia Hoffman to the Air Force by providing account information for the joint account she held with Plaintiff. It is undisputed, however, that the name "Claudia Hoffman" or "Claudia Escobar" never arose in any of Tritschler's conversations with the Air Force in mid-October 1999. (Tritschler's Depo., pp. 76, 85).

Even assuming Defendant provided Claudia Hoffman's financial information to the Air Force in October, 1999, the record reveals that the information provided was limited to the existence of an account she held jointly with Plaintiff. To the extent that Claudia Hoffman's identity or the existence of her joint account was disclosed to the Air Force in October 1999, Defendant's disclosure is nevertheless protected by 12 U.S.C. § 3403(c) based on Plaintiff's suspicious activities.[14] Any information regarding Claudia Hoffman provided in response to the grand jury subpoena is protected by 12 U.S.C. § 3413(i). Therefore, Defendant is entitled to summary judgment on Claudia Hoffman's claims.

---

[14] Implicit in Plaintiffs' argument is the suggestion that, despite the exemptions set forth in the RFPA, Defendant was not permitted to disclose Plaintiff's financial information based on his suspicious activities solely because Claudia Hoffman was a named beneficiary on the account. Plaintiffs have cited no authority for the proposition that joint accounts are exempted from the exemptions provided by the RFPA. This proposition appears illogical in light of the purpose of the RFPA and the various statutory and regulatory exemptions and immunities. *See Lopez*, 129 F.3d at 1190-92.

Accordingly, it is **ORDERED AND ADJUDGED** that

1) Defendant's Motion for Summary Judgment (Dkt. 74) is **GRANTED**.

2) Defendant's Motion to Establish Agreed Facts (Dkt. 77) is **DENIED** as moot.

3) All pending motions are **DENIED** as moot.

4) The Clerk is directed to enter judgment in favor of Defendant and close this case.

**DONE AND ORDERED** in chambers this 15th day of May, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record